IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:08CV33-V

| | |
|---|---|
| J & J Sports Productions, Inc., )<br>Plaintiff, )<br> )<br>v. )<br> )<br>Maria Olmos, individually, and )<br>Las Chivas, Inc., d/b/a El Tapatio 2, )<br>Defendants. )<br>_____ ) | ORDER GRANTING<br>DEFAULT JUDGMENT |

**THIS MATTER** is before the Court on Plaintiff's Motion for Default Judgment, filed February 27, 2009. (Documents ##9-1 thru 9-4)

Plaintiff J & J Sports Productions, Inc. ("J & J"), is an international distributor of sports and entertainment programming. J & J purchases licensing rights for the commercial exhibition of sports and entertainment programming. J & J then enters into sub-licensing agreements with commercial entities, thereby granting the entity the right to exhibit the program legitimately pursuant to written agreement.

The essence of Plaintiff's cause of action is that Defendants unlawfully intercepted and intentionally broadcast a sporting event which Plaintiff possessed the exclusive territorial rights to broadcast in violation of federal law, namely, 47 U.S.C. §§ 605 and 553.[1] The sporting event allegedly intercepted (or "pirated") is the *Oscar De La Hoya v. Ricardo Mayorga WBC Light Middleweight Championship Fight Program* of May 6, 2006, including undercard or preliminary

---

[1] Section 605 targets commercial establishments and prohibits the interception and broadcast of satellite cable programming without a license for gain. Section 553 generally prohibits the unauthorized interception or reception of communications over a cable system.

1

bouts.[2]

Plaintiff J & J offers an affidavit from Mr. Kim Duncan ("Duncan"), a hired investigator. According to Duncan, he visited the El Tapatio Restaurant ("El Tapatio") on May 6, 2006 from approximately 11:32 p.m. til around 12:07 a.m on May 7, 2006. (Pl.'s Exh. A / Duncan Aff.) At his request, Duncan was able to watch the Program on television(s) within the El Tapatio establishment. Duncan reportedly observed ten to twelve other patrons in the restaurant. (Id.)

J & J also offers an affidavit from its President, Joseph M. Gagliardi ("Gagliardi"). Gagliardi avers that J & J's programming "is *not* and cannot be mistakenly, innocently or accidentally intercepted." (Gagliardi Aff, ¶8) Rather, Gagliardi claims that the use of various mechanisms (*e.g.*, a "blackbox," "hotbox," "pancake box" for cable TV lines; "smartcard," "testcard" or "programming card" for satellite receiver lines; or other illegal unencryption devices like the purchase of illegal satellite authorization codes found on the internet or trade publications) is necessarily intentional in that these devices are designed to descramble the reception of a pay-per-view broadcast. (Gagliardi Aff, ¶¶8A-E) By way of default, J & J seeks to recover the maximum amount of statutory damages, including attorneys' fees, investigative costs, and interest.

The record reveals service was effected upon each named Defendant. (Documents ##5,6) The Defendants failed to answer the Complaint. Accordingly, the Clerk entered default on August 28, 2008. (Document #8)

---

[2] For convenience, the Court will refer to the boxing match itself, as well as all related bouts, as the "Program."

### A. Violation of The Cable Act, 47 U.S.C. § 605(a)

This Court has already determined that J & J established a valid claim under Section 605(a).[3]
Section 605(a) provides in pertinent part as follows:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). Any person aggrieved by a violation of Section 605(a) may bring a private civil action against the violator and seek damages under Section 605(e)(3)(C). *See* 47 U.S.C. §605(e)(3)(C). Having reviewed the record, the Court finds Plaintiff has proven that Defendants engaged in the unauthorized and knowing interception of its satellite broadcast, which Defendants published in their restaurant for their own benefit and the benefit of their patrons. Thus, Plaintiff has proven violation under 47 U.S.C. § 605(a).

### B. Statutory Damages Pursuant To The Cable Act, 47 U.S.C. § 605(e)

Plaintiff seeks to hold Defendants jointly and severally liable for statutory damages pursuant to 47 U.S.C. § 605. Damages for a violation of Section 605(a) are permitted as follows:

> The Court – (i) *may* grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) of this section; (ii) *may* award damages as described in subparagraph (C); and (iii) *shall* direct the recovery of full costs, including reasonable attorneys' fees to an aggrieved party who

---

[3] Upon entry of default, the Court accepted as true Plaintiff's allegations.

prevails.

47 U.S.C. § 605(e)(3)(B) (*emphasis added*). Subparagraph (C) provides as follows:

> Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses . . . (II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of **not less than $1,000 or more than $10,000**, as the court considers just . . .

47 U.S.C. §605(e)(3)(C)(i)(II)(emphasis provided). The Court may grant enhanced damages up to a maximum of $100,000 pursuant to 47 U.S.C. §605(e)(3)(C)(ii) where the defendant has engaged in willful violation of the statute or where the defendant has committed the violation for "purposes of direct or indirect commercial advantage or private financial gain."

The award of statutory damages under Section 605(e)(3) is committed to the Court's discretion. *See DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 330 n. 8 (4th Cir. 2008) (adopting factors invoked in *Nalley* for purposes of discretionary decisions regarding imposing statutory damages)*; Nalley v. Nalley*, 53 F.3d 649, 652 (4th Cir. 1995)*.* The Fourth Circuit has deemed the following factors ("the *Nalley* factors") relevant: the severity of the violation; the degree of harm to the plaintiff; the relative financial burdens of the parties; and the purpose to be served by imposing statutory damages. *Id.* at 330. In addition, the *Nalley* factors "should be considered against the backdrop of the seriousness with which Congress has treated the underlying conduct at issue." *Id.* at 328 (noting that Congress intended "that violators who intercept encrypted transmissions, requiring greater technical savvy and efforts, are to face greater punishments than those who take fewer measures in order to intercept nonencrypted transmissions.") (internal cites omitted).

In the instant case, J & J asks for an enhanced statutory damages award in the amount of $110,000.00, the maximum amount of statutory damages. For the reasons set forth herein, the Court

will not enhance the statutory damages award despite Gagliardi's representation that the encrypted signal cannot be intercepted or received inadvertently and, as such, that Defendants' actions amount to "theft." As for the severity of the violation, J & J reports a single incident of pirating with *de minimis* exposure to the public and, therefore, relatively little commercial gain to Defendants. Duncan's affidavit reveals that although the restaurant could accomodate approximately one-hundred and sixty, there were fewer than twenty patrons present. Moreover, Duncan had to specifically request to view the Program. J & J contends that the degree of harm to its business is great given that, in addition to the loss of future customers, pirating damages its reputation and the "good will" it has developed with its paying customers. (Gagliardi Aff., ¶¶5,6) In terms of the parties' respective financial burdens, J & J asserts that it dedicates a significant amount of money to the identification and detection of signal pirates and that its overall monetary loss for these types of violations are in the "millions." (Gagliardi Aff., ¶¶10,11) Presumably, the cost to Defendants for obtaining the license to view the Program lawfully would be much less. Finally, it is generally accepted that the primary purpose to be served by imposing statutory damages is to defer future violations.

Having now carefully considered the *Nalley* factors, and the evidence before the undersigned with respect to Defendants, the Court will award statutory damages for Defendant's violation of Section 605(a) in the amount of **$5,000**. See 47 U.S.C. §605(e)(3)(c)(i)(II). This award should more than cover any actual damages or losses to J & J as well as pose a sufficient deterrent. The Plaintiff is also entitled to its attorneys fees and cost under 47 U.S.C. §605(e)(3)(B)(iii). Plaintiff requests **$1012.50** in attorney fees and **$250** in costs. (Leigh Aff. ¶¶5-7) Each Defendant shall be held jointly and severally liable.

### C. The Unauthorized Reception of Cable Service, Violation of 47 U.S.C. § 553

In Count III of the Complaint, based upon identical allegations, Plaintiff J & J also asserts a cause of action under 47 U.S.C. § 553. Title 47, United States Code, Section 553 provides in pertinent part:

> "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."

47 U.S.C. § 553(a)(1). The term "assist in intercepting or receiving" includes "the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system ...." 47 U.S.C. § 553(b).

Like Section 605, Section 553 contemplates actual or statutory damages as well as enhanced damages awards for willful violations aimed at commercial advantage or private financial gain. 47 U.S.C. §553(b)(3)(A) and (B). Statutory damages are authorized "in a sum of not less than $250 or more than $10,000." 47 U.S.C. § 553(b)(3)(A)(ii). "In any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory ... by an amount of not more than $50,000." 47 U.S.C. § 553(b)(3)(B). Thus, in the event of a willful violation, an enhanced award is left to the discretion of the Court.

In light of the damages being awarded pursuant to Section 605, however, the Court declines to award damages under Section 553. *See* Kingvision Pay-Per-View, Ltd. v. Ortega, 2002 US Dist.LEXIS 24305, *6 (N.D.Cal. 2002) (declining to award statutory damages under both Sections 605 and 553, finding that to do so would be cumulative).

**D. Judgment**

**NOW, THEREFORE,** the Court concludes that judgment by default should be hereby entered against the Defendants Maria Olmos, individually, and Las Chivas, Inc., in accordance with the prayer of said Complaint, Motion For Default Judgment, Memorandum In Support, and accompanying exhibits, for the sum set forth below; and

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED** that the Plaintiff have and recover of the Defendants, jointly and severally, the total sum of **$6,262.50.**

Signed: February 19, 2010

Richard L. Voorhees
United States District Judge